OSCN Found Document:Question Submitted by: The Honorable Brent Howard, Oklahoma State Senate, District 38

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Brent Howard, Oklahoma State Senate, District 38
2024 OK AG 2
Decided: 02/06/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 2, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
What instruments are not subject to the affidavit requirement in title 60, section 121 (Supp.2023) of the Oklahoma Statutes?
I.
SUMMARY
¶1 As of November 1, 2023, section 121 requires the filing of an affidavit when recording a deed with an Oklahoma county clerk. (S.B. 212, 2023 Leg., 59th Sess., 2023 Okla. Sess. Laws ch. 327, § 1). In addition, the amendments mandate this office promulgate template affidavits and vest it with the authority to declare one or more deeds exempt from the affidavit requirement. Pursuant to that authority, this office concludes that the following instruments and entities are exempt from the affidavit requirement in section 121:

1. Deeds where the grantee is a domestic governmental body, including, for example, the United States, the State of Oklahoma or a political subdivision thereof[1], or a Tribe;[2]
2. State or federal court orders and decrees in probate proceedings, divorce actions, quiet title actions to cure a defect in title, or other judicial orders and decrees affecting title to land;
3. Deeds that do not convey or otherwise transfer title or ownership when recording the instrument, including transfer on death deeds and correction deeds; and
4. Deeds conveying only oil or gas interests.
[3]

II.
BACKGROUND
¶2 Since statehood, Oklahoma law has regulated the rights of aliens to own or hold title to land in Oklahoma. OKLA. CONST. art. XXII, § 1.[4] Indeed, the constitutional provisions are vitalized by statute, which implements this prohibition to prohibit those who are not United States citizens from acquiring title or owning land in Oklahoma. 60 O.S.Supp.2023, § 121. Oklahoma's land ownership prohibitions are similar to longstanding federal laws on this issue, enacted to prevent aliens' acquisition of large tracts of land in the Western territories. 48 U.S.C. § 1501--1508; see also Larkin v. Washington Loan & Trust Co., 31 F.2d 635 (D.C. Cir. 1929). Thus, the plain language of Oklahoma's constitutional and statutory provisions, as well as case law, evidence common concern with Oklahoma land acquisitions by aliens (i.e., foreign) and those who do not intend to attach themselves to the State of Oklahoma.
¶3 Exceptions to the ownership prohibitions have existed since statehood for Native Americans born within the United States and for non-citizens who may become bona fide residents of the State of Oklahoma. Then, in 1976, this office conclusively determined that the term "person" in section 121 prohibits a foreign country from acquiring or holding property in the State except under conditions outlined in article XXII, section 1 of the Oklahoma Constitution and title 60, sections 121--124. 1976 OK AG 253. Subsequently, in 1981, the Oklahoma Supreme Court determined that the drafters of the Oklahoma Constitution did not intend for domesticated foreign corporations to be subject to the same restrictions imposed on aliens. State ex rel. Cartwright v. Hillcrest Invs., Ltd., 1981 OK 27, ¶ 31, 630 P.2d 1253, 1260.[5] These constitutional and statutory provisions have continuously operated as the Legislature intended--to restrict ownership of Oklahoma land by foreign persons and foreign entities, including a foreign country.[6]
¶4 Following passage of State Question 788 in 2018, permitting licensed legal cultivation, use, and possession of marijuana for medicinal purposes, Oklahoma continues to experience a massive surge in illicit marijuana grow operations, which are often connected to foreign criminal enterprises.
[7] Further, these unlawful operations threaten public safety and harm Oklahoma communities.[8] In response, the Legislature enacted a series of laws aimed to help law enforcement agencies combat the illegal marijuana operations in Oklahoma. It is one of these measures, Senate Bill 212, that you inquire about. Senate Bill 212 changed Oklahoma's land ownership restrictions in section 121 in several ways.
¶5 First, the Legislature added an express restriction on an alien's indirect ownership of land. See also 1979 OK AG 286¶ 23 ("An alien may not directly or indirectly acquire title to or own land in the State of Oklahoma.") (Emphasis added.) Second, the Legislature added an exemption to the land ownership restrictions for a business entity that is engaged in regulated interstate commerce in accordance with federal law.[9] Finally, the legislative amendments require an affidavit be included with a deed recorded with a county clerk.[10] With the latter change, the Legislature also vested this office with the authority to exempt any deed when deemed necessary. Accordingly, in light of your inquiry and to ensure uniformity in implementation, as well as protect state and local officers in their good faith implementation of the laws of the State, this office considers it necessary to exempt certain deeds as set forth below.[11]
III.
DISCUSSION
A. Deeds where the grantee is a domestic governmental body, including, for example, the United States, the State of Oklahoma or a political subdivision thereof, or a Tribe
¶6 Three elements must be present to trigger the requirement to file an affidavit when recording a deed with a county clerk. First, the grantee(s) must be a "person, business entity, or trust" taking title or ownership in compliance with the land ownership laws." Second, the instrument must be a "deed." Finally, at the time of recording the deed, title or ownership must be transferred. 60 O.S.Supp.2023, § 121(B).
¶7 The first element is likely dispositive in relation to governmental entities. It requires determining whether a governmental entity is a "person, business entity, or trust." Legislative intent controls statutory interpretation. Nealis v. Baird, 1999 OK 98, ¶ 35, 996 P.2d 438, 452--53. Only where the legislative intent cannot be ascertained from the statutory language are rules of statutory construction employed. State ex rel. Dep't of Human Servs. v. Colclazier, 1997 OK 134, ¶ 9, 950 P.2d 824, 827.
¶8 Oklahoma statute defines "person" to include "bodies politic or corporate." 25 O.S.2021, § 16. Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase whenever it occurs, unless a contrary intention plainly appears. Oliver v. City of Tulsa, 1982 OK 121, ¶ 18, 654 P.2d 607, 611. Nothing suggests the Legislature intended a contrary definition or meaning of "person" in section 121. Accordingly, the definition of "person" in title 25, section 16 likely applies to section 121 and, therefore, subjects governmental bodies to the affidavit requirement. Traditionally, this answer is dispositive of the issue. Here, however, under section 121, the Legislature vests this office with the authority to declare one or more instruments exempt from the affidavit requirement. Pursuant to this authority granted under section 121, this office looks to the broad public policy purposes underlying section 121 and declares that deeds in which the United States, the State of Oklahoma, a political subdivision, or a federally recognized Indian Tribe is a grantee, are exempt from the requirement under title 60, section 121 to file an affidavit when recording a deed with a county clerk. 60 O.S.Supp.2023, § 121; Oklahoma Ass'n for Equitable Tax'n v. City of Oklahoma City, 1995 OK 62, ¶ 5, 901 P.2d 800, 803, cert. denied, 516 U.S. 1029 (1995); Haggard v. Haggard, 1998 OK 124, ¶ 12, 975 P.2d 439, 442.
¶9 As detailed above, the 2023 legislative amendments to title 60, section 121 aim to help law enforcement agencies at all levels combat the illegal marijuana operations across the state. Statements from the authors of Senate Bill 212 and this office plainly evidence that Senate Bill 212 stems from a surge in illegal marijuana grow operations on Oklahoma land ("marijuana farms"), which are often owned, operated, or financially connected to foreign enterprises, including Mexican drug cartels and Chinese nationals.[12] S.B. 212, 2023 Okla. Sess. Laws ch. 327, § 1; see also GENTNER DRUMMOND OKLA. ATT'Y GEN., supra note 7. ("These illegal grows are often operated by Mexican drug cartels and Chinese nationals whose illicit activities also include human trafficking, sex trafficking and the distribution of deadly drugs such as fentanyl.") According to Senator David Bullard, the Senate author of Senate Bill 212, the amendments to section 121 strengthen the State's fight against illegal purchases with the proliferation of land grabs following the legalization of medical marijuana. See Bill to stop illegal purchases of Oklahoma land heads to governor, OKLAHOMA SENATE, (May 19, 2023, 2:21 PM), https://oksenate.gov/press-releases/bill-stop-illegal-purchases-oklahoma-land-heads-governor.
¶10 Clearly, the affidavit serves as a tool for law enforcement to eliminate the illicit operators in Oklahoma. Equally so, the intent of the affidavit requirement is not to be a mechanism of hindering law-abiding individuals and certain domestic governmental agencies from transacting their business. There is simply no indication of a concern with the United States Government, the State of Oklahoma, a federally recognized Indian tribe, including any of their agencies, or a political subdivision, supporting or cultivating marijuana on land in Oklahoma. For example, Senate Bill 212 expresses no concern about the Oklahoma Department of Transportation ("ODOT") illegally operating a marijuana farm. It logically follows then that ODOT need not unnecessarily file an affidavit each time it records a deed after receiving a parcel of property as part of a highway improvement project. Accordingly, this office concludes and declares, in its discretion, that governmental entities that are a part of the United States Government, the State of Oklahoma or a political subdivision thereof, or a federally recognized Indian tribe are exempt from the requirement to include an affidavit with a deed recorded with a county clerk in the State of Oklahoma.[13]
B. State or federal court orders and decrees in probate proceedings, divorce actions, quiet title actions to cure a defect in title, or other judicial orders and decrees affecting title to land
¶11 Questions also persist concerning the definition of "deed" in title 60, section 121, or stated more pointedly, whether specific instruments are within that term and, therefore, subject to the affidavit requirement. The word "deed" means a "writing . . . which evidences the terms of the contract between the parties whereby the title to real property is transferred from one to the other . . . ." National Fire Ins. Co. v. Patterson, 1935 OK 161, ¶ 13, 41 P.2d 645, 647; K & K Food Servs., Inc. v. S & H, Inc., 2000 OK 31, 3 P.3d 705. According to this definition, a deed is a contract, which "is an agreement to do or not do a certain thing . . . [which] results from [an] offer and acceptance." 15 O.S.2021, § 1; Gomes v. Hameed, 2008 OK 3, ¶ 18, 184 P.3d 479, 485. Further, the existence of a contract requires parties capable of contracting, their consent, a lawful object, and sufficient consideration. 15 O.S.2021, § 2. Conveyances that do not satisfy these requirements are exempt from the affidavit requirement.
¶12 Further, court decrees are judicial judgments that "determine rights, status, or other legal relations" between parties under the law. 12 O.S.2021, § 1651. A contract, such as a deed, depends upon the voluntary actions of the parties involved. A court decree is not a deed for purposes of the affidavit requirements under title 60, section 121. Compare 16 O.S.2021, § 78 (defining "title transaction" as "any transaction affecting title to any interest in land, including . . . by tax deed, mineral deed, lease or reservation, or by trustee's referee's, guardian's, executor's . . . sheriff's or marshal's deed, or decree of any court . . . ." (emphasis added)). Accordingly, by statutory construction, state or federal court orders and decrees in probate proceedings, divorce actions, quiet title actions to cure a defect, or other judicial orders and decrees are exempt from the affidavit requirement in title 60, section 121.
C. Deeds that do not convey or otherwise transfer title or ownership when recording the instrument, including transfer on death deeds and correction deeds
¶13 The transfer of title or ownership does not occur when filing certain types of documents with the county clerk. For example, in a transfer on death deed, the transfer of ownership or title does not occur until the grantor's death. 58 O.S.Supp.2023, § 1252(A); see also 58 O.S.2021, § 1257 ("[a] record owner who executes a transfer-on-death deed remains the legal and equitable owner until [their] death"). Moreover, section 1252 also prohibits a grantee from signing, consenting, or agreeing to the transfer of ownership or title during the lifetime of the record owner. Accordingly, by statutory construction, a transfer-on-death deed is outside of the scope of the affidavit requirements under title 60, section 121.
¶14 Correction deeds, which relate back to the date of the original deed transferring ownership or title, therefore, also do not convey title at the time of recording. Accordingly, correction deeds that are curative and, without additional consideration, confirm, correct, modify or supplement a previously recorded deed are, by statutory construction, exempt from the affidavit requirements under title 60, section 121. Foley v. Worthington, 1949 OK 180, 209 P.2d 871.
¶15 Finally, an affidavit of a surviving joint tenant pursuant to title 58, section 912, which evidences the death of a grantee already holding title and does not convey the land because the surviving joint tenant already holds title, is exempt, by statutory construction, from the affidavit requirement.
D. Deeds conveying only oil or gas interests[14]
¶16 As detailed above, Oklahoma has both constitutional and statutory provisions restricting alien ownership of land. However, neither article XXII, section 1, nor title 60, section 121, supply a definition of "land." However, it is settled that land is a subpart of real property, which is a subpart of property. 60 O.S.2021, §§ 4--5. Further, until 2011, title 60 of the Oklahoma Statutes defined "land" as "the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance." 60 O.S.Supp.2010, § 6. Relying on this definition, the Oklahoma Court of Civil Appeals determined that "[t]he word 'land' includes not only the surface, but also the minerals found below it." Boswell Energy v. Arrowhead Homes, 1999 OK CIV APP 36, ¶ 8, 976 P.2d 1113, 1116.[15] Notably, however, following Boswell, the Legislature amended the definition of land in section 6 to state, as it currently does:
A. Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance, and includes any pore space.
B. 1. As used in this section, "pore space" means any interstitial space not occupied by soil or rock, within the solid material of the earth, and any cavity, hole, hollow or void space within the solid material of the earth.
2. As used in this section, pore space is real property and, until title to the pore space or rights, interests or estates in the pore space are separately transferred, pore space is property of the person or persons holding title to the land surface above it.
3. Notwithstanding the ownership of the pore space, nothing in this section shall alter or be construed to alter the ownership of, or rights associated with the oil or gas, as those terms are defined in Section 86.1 of Title 52 of the Oklahoma Statutes, that may be within the pore space.
60 O.S.2021, § 6 (emphasis added).[16]
¶17 If the meaning of a statute is ever in doubt, an amendatory legislative act is presumed to clarify the existing law's ambiguity. Texas Cnty. Irrigation And Water Res. Ass'n v. Oklahoma Water Res. Bd., 1990 OK 121, ¶ 6, 803 P.2d 1119, 1122. The 2011 amendments to section 6 are presumed to clarify whether contents of pore space are within the term "land," and they are unequivocally now not included with the term. Currently, "land" is the solid material of the earth, including the pore space, but excluding the contents of the pore space. 60 O.S.2021, § 6. Logically, contents of pore space means fluids and gases, like oil and gas, and therefore, deeds conveying only oil or gas transactions are declared exempt from the affidavit requirement in title 60, section 121.
¶18 It is, therefore, the official Opinion of the Attorney General that: 

The following recorded instruments and entities are declared exempt--by either statutory construction or under the discretion of the Attorney General--from the affidavit requirement in title 60, section 121 of the Oklahoma Statutes:
1. Deeds where the grantee is a domestic governmental body, including, for example, the United States, the State of Oklahoma or a political subdivision thereof, or a Tribe;
2. State or federal court orders and decrees in probate proceedings, divorce actions, quiet title actions to cure a defect in title, or other judicial orders and decrees affecting title to land; 
3. Deeds that do not convey or otherwise transfer title or ownership when recording the instrument, including transfer on death deeds and correction deeds; and
4. Deeds conveying only oil or gas interests.

[17]
 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
BRAD CLARK
DEPUTY GENERAL COUNSEL
FOOTNOTES
[1] Political subdivision has the same meaning as that term is defined in title 51, section 152 (Supp.2022).
[2] This declaration does not determine whether these instruments are otherwise exempt from the provisions of section 121 and shall not be construed in such a manner. Instead, this declaration is made only under the express authority in title 60, section 121 (Supp.2023). Such authority provides: "The Attorney General shall promulgate a separate affidavit form for individuals and for business entities or trusts to comply with the requirements of this section, with the exception of those deeds which the Attorney General deems necessary when promulgating the affidavit form." 60 O.S.Supp.2023, § 121(B) (emphasis added).
[3] See also supra, note 1. Further, this declared exemption includes assignments and leases of only oil or gas interests. Furthermore, as detailed below, the 2023 amendments to section 121 are intended to only affect surface interests where marijuana can be grown. There being no intent to affect any minerals, hard or soft, this office declares, in its discretion, that deeds conveying only subsurface mineral interests are necessarily exempt from the affidavit requirement in title 60, section 121.
[4] The Oklahoma Constitution, article XXII, section 1 provides:
No alien or person who is not a citizen of the United States, shall acquire title to or own land in this state, and the Legislature shall enact laws whereby all persons not citizens of the United States, and their heirs, who may hereafter acquire real estate in this state by devise, descent, or otherwise, shall dispose of the same within five years upon condition of escheat or forfeiture to the State: Provided, This shall not apply to Indians born within the United States, nor to aliens or persons not citizens of the United States who may become bona fide residents of this State . . . .
Okla. Const. art. XXII, § 1. The Legislature has vitalized this provision of the Constitution in title 60, sections 121--127 (2021 & Supp.2023).
[5] With the enactment of Senate Bill 212, businesses engaged in regulated interstate commerce are also exempt from the ownership restrictions. 60 O.S.Supp.2023, § 121.
[6] The federal law, which applied to Oklahoma Territory at the time that our State Constitution was adopted, provided in part that:
No alien or person who is not a citizen of the United States, or who has not declared his intention to become a citizen of the United States in the manner provided by law shall acquire title to or own any land in any of the Territories of the United States except as hereinafter provided. 
Act of Mar. 3, 1877, ch. 340, § 1, 24 Stat. 476; Act of Mar. 2, 1897, ch. 363, 29 Stat. 618 (codified at 48 U.S.C. § 1501).
[7] Drummond praises signing of laws to combat illegal marijuana operations, Gentner Drummond Okla. Att'y Gen. (June 9, 2023), https://www.oag.ok.gov/articles/drummond-praises-signing-laws-combat-illegal-marijuana-operations.
[8] Man demanded $300,000 before killing 4 workers at Oklahoma pot farm, prosecutors say, CBS News (Dec. 5, 2022, 2:22 PM), https://www.cbsnews.com/news/chen-wu-charged-killing-4-workers-oklahoma-pot-farm-300000-investment/; State v. Chen Wu, No. CF-2022-72 (Dist. Ct. Kingfisher Cnty., Okla. filed Dec. 2, 2022).
[9] This office interprets the phrase "engaged in regulated interstate commerce in accordance with federal law" as all activities of the business entity are either expressly permitted by federal regulation or federal law, or not prohibited by federal regulation or federal law.
[10] Generally, each person taking title as a grantee must sign the required affidavit. Provided, however, if the transaction has more than one grantee and one or more of the grantees can attest to the same facts in the affidavit, those grantees may sign the same affidavit. For example, assume that a husband and wife are taking title or ownership to the land, and they each can attest to identical facts in the affidavit. In that case, the husband and wife can sign a single affidavit. Similarly, where a business entity or trust is taking title or ownership of land, the business entity or trust may authorize a single person to execute the required affidavit on behalf of the business or trust.
[11] To prepare for the implementation of these legislative changes, knowing that they will impact the vast majority of land transactions in the state, this office worked with a diverse group of stakeholders, including the county government officers, county clerks, district attorneys, the Oklahoma Real Estate Commission, the Oklahoma State Bankers Association, the Oklahoma Land Title Association, abstractors, lenders, title companies, lawyers, legislators, and others to develop the affidavits and to implement the new requirements in law. This office's work with these stakeholders continues, as does the partnerships with governmental agencies and Oklahomans engaging in land transactions. Across Oklahoma's seventy-seven counties, there is undoubtedly good faith in implementing this new law. However, uniformity does not exist and a substantial volume of questions regarding the scope of the law and the necessity of filing an affidavit continue to arise. This results in understandable frustration and delays in recording land transactions, and this office recognizes that these recurring issues are unnecessarily diverting resources in state and county offices. See also supra note 1.
[12] Officials' expressions of legislative intent when participating in the law-making process may be "especially well informed," and this office may give deference to that expression of intent. Compsource Mut. Ins. Comp. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54, ¶ 41, 435 P.3d 90, 104.
[13] By extension, the declared exemption extends to entities under conservatorship domestic governmental bodies, including Fannie Mae and Freddie Mac, which have been under the conservatorship of the Federal Housing Finance Agency since 2008. Further, this determination shall not be construed beyond the provisions of Oklahoma law relating to restrictions on alien ownership of land, namely article XXII, section 1 of the Oklahoma Constitution and the provisions of title 60, sections 121--127 (2021 & Supp.2023). That is, these entities must comply with any other statutory requirements otherwise applicable to them.
[14] See also supra, note 2.
[15] The Court of Civil Appeals also looked to the provisions of title 60, section 64 and the Oklahoma Supreme Court's decision in Lewis v. Sac & Fox Tribe of Oklahoma Housing Authority, 1994 OK 20, 896 P.2d 503.
[16] Wall v. Marouk, 2013 OK 36, ¶ 12, 302 P.3d 775, 782 ("It is within the province of the legislative body to define words appearing in legislative acts, and where an act passed by the legislature embodies a definition, it is binding on the courts.")
[17] The Attorney General is the state's chief law officer and is entrusted with the duty of providing legal guidance to public officers and advising them on questions of law which relates to their official duties. This office's opinions are binding upon state officials affected by them, and they must follow and not disregard those opinions. 74 O.S.Supp.2022, § 18b; State ex rel. York v. Turpen, 1984 OK 26, ¶ 5, 681 P.2d 763, 765. Equally, local public officers, including county officers, must follow and not disregard opinions or advice from this office until judicially relieved of compliance. Hendrick v. Walters, 1993 OK 162, ¶ 20, 865 P.2d 1232, 1243; Rasure v. Sparks, 1919 OK 231, ¶ 7, 183 P. 495, 498. A public officer who acts in conformity with this office's opinion is afforded protection from civil liability, as well as from forfeiture of office. Rasure, 1919 OK 231, ¶ 7, 183 P. at 498

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1979 OK AG 286, 
Question Submitted by: Mr. Jay Casey, Director, Department of Industrial Development
Cited

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1999 OK CIV APP 36, 976 P.2d 1113, 70 OBJ 1464, 
Boswell Energy Corporation v. Arrowhead Homes, Inc.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1990 OK 121, 803 P.2d 1119, 61 OBJ 3027, 
Texas County Irr. and Water Resources Ass'n v. Oklahoma Water Resources Bd.
Discussed

 
1993 OK 162, 865 P.2d 1232, 65 OBJ 33, 
Hendrick v. Walters
Discussed

 
1994 OK 20, 896 P.2d 503, 65 OBJ 535, 
Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority
Discussed

 
1935 OK 161, 41 P.2d 645, 170 Okla. 593, 
NATIONAL FIRE INS. CO. v. PATTERSON
Discussed

 
1919 OK 231, 183 P. 495, 75 Okla. 181, 
RASURE Co. Supt. v. SPARKS et al.
Discussed at Length

 
1995 OK 62, 901 P.2d 800, 66 OBJ 2037, 
Oklahoma Assn. for Equitable Taxation v. City of Oklahoma City
Discussed

 
2008 OK 3, 184 P.3d 479, 
GOMES v. HAMEED
Discussed

 
2013 OK 36, 302 P.3d 775, 
WALL v. MAROUK
Discussed

 
2018 OK 54, 435 P.3d 90, 
COMPSOURCE MUTUAL INSUR. CO. v. STATE ex rel. OKLA. TAX COMM. and OKLA. ASSOC. OF ELECTRIC SELF INSURERS FUND v. STATE OF OKLA. TAX COMM.
Discussed

 
1999 OK 98, 996 P.2d 438, 70 OBJ 3640, 
Nealis v. Baird
Discussed

 
2000 OK 31, 3 P.3d 705, 71 OBJ 965, 
K & K Food Services, Inc. v. S & H, Inc.
Discussed

 
1981 OK 27, 630 P.2d 1253, 
State ex rel. Cartwright v. Hillcrest Investments, Ltd.
Discussed

 
1997 OK 134, 950 P.2d 824, 68 OBJ 3526, 
STATE ex rel. DEPT. OF HUMAN SERVICES v. COLCLAZIER
Discussed

 
1982 OK 121, 654 P.2d 607, 
Oliver v. City of Tulsa
Discussed

 
1949 OK 180, 209 P.2d 871, 202 Okla. 23, 
FOLEY v. WORTHINGTON
Discussed

 
1998 OK 124, 975 P.2d 439, 69 OBJ 4267, 
Haggard v. Haggard
Discussed

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1651, 
Determination of Rights, Status or Other Legal Relations - Exceptions
Cited

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 1, 
Definition - Contract
Cited

 
15 O.S. 2, 
Essential Elements of Contract
Cited

Title 16. Conveyances

 
Cite
Name
Level

 
16 O.S. 78, 
Definitions
Cited

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 16, 
Person Defined
Cited

Title 58. Probate Procedure

 
Cite
Name
Level

 
58 O.S. 1252, 
Real Interest Titled in Transfer-on-Death Form - Acceptance by Designated Grantee Beneficiary
Cited

 
58 O.S. 1257, 
Record Owner Rights
Cited

Title 60. Property

 
Cite
Name
Level

 
60 O.S. 4, 
Property Classified
Cited

 
60 O.S. 6, 
Land Defined
Discussed at Length

 
60 O.S. 121, 
Ownership of Personal and Real Property by Aliens
Discussed at Length

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 18b, 
Duties of Attorney General - Counsel of Corporation Commission as Representative on Appeal From Commission
Cited